**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROMERIO LA'TEE WALKER,

        Petitioner,

v.                                     Case No. 8:13-cv-3034-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

        Respondent.

                                       /

## ORDER

       Petitioner Romerio La'Tee Walker, proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 1.) He also filed a memorandum of law with an appendix. (Dkts. 3, 4.) Walker challenges convictions entered by the Circuit Court for the Tenth Judicial Circuit, in and for Polk County, Florida. Respondent filed a response (Dkt. 27), in which it concedes the petition's timeliness. Petitioner filed a reply with an appendix. (Dkts. 31, 32.) Upon review, the petition must be denied.

**PROCEDURAL HISTORY**

       Walker was charged with possession of cocaine with intent to sell (count one) and possession of drug paraphernalia (count two). (Dkt. 29, Ex. 1.) In August 2008, he entered a plea of no contest in exchange for a sentence of eight years in prison on count one, to be suspended on the condition that he complete ten years of probation. (Dkt. 29, Ex. 4.) He was sentenced to time served on count two. (Dkt. 29, Ex. 83, Vol. VII, p. 1183.) Walker voluntarily dismissed his direct appeal. (Dkt. 29, Ex. 18.) Walker's probation officer filed

several affidavits alleging violations of probation.  (Dkt. 29, Exs. 5, 7, 9, 10, 17.)  At a June 2010 hearing, upon finding that Walker violated his probation, the court revoked probation and sentenced Walker to serve the eight year term that was previously suspended. (Dkt. 29, Ex. 31.)  Walker appealed, but voluntarily dismissed his appeal.  (Dkt. 29, Ex. 37.)

Walker filed numerous postconviction motions challenging his convictions and sentences.  His pleadings included several motions for postconviction relief under Florida Rule of Criminal Procedure 3.850 and a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Dkt. 29, Exs. 43, 54, 69.)  The state court summarily denied these motions.  (Dkt. 29, Exs. 56, 67, 70, 72.)  In a consolidated appeal, the state appellate court *per curiam* affirmed the orders of denial.  (Dkt. 29, Ex. 88.)[1]

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

---

[1]Federal district courts review habeas petitions filed by a person "in custody pursuant to the judgment of a State court."  28 U.S.C. § 2254(a).  Although Walker has been released from prison, the "in custody" requirement is satisfied because he was incarcerated in the Department of Corrections when he filed his habeas petition.  The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)).

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The

phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court affirmed the denial of Walker's postconviction motion in a *per curiam* decision without a written opinion. This decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state

court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82. Walker bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  Demonstrating deficient

performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Walker must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground Four**

Walker was represented by a succession of three attorneys, and he filed pre-plea motions to dismiss two of them.  (Dkt. 29, Ex. 84, Vol. VI, pp. 1020-24, 1057-63; Vol. VII, pp. 1165-73.)  Walker's last motion concerned Assistant Public Defender Geoffrey Foster, the attorney who represented him at the change of plea hearing.[2]  In Ground Four, Walker asserts that "a defendant's choice to plea[d] cannot be induced by fear of a[n] unfair trial with inadequate counsel."  (Dkt. 1, p. 10.)  He claims that  he "allowed [him]self to be sentenced under [the] plea" agreement rather than to proceed to trial with an attorney whom the court would not dismiss.  (*Id.*)  Walker's allegation is interpreted as presenting a challenge to the voluntariness of his plea.

Walker states that he raised this argument as claim 20 of his third amended postconviction motion.  There, he alleged that he was forced to enter a plea due to judicial bias.[3]  The state court denied this claim:

> In claim 20, Defendant writes that his judgment and sentence were the result of judicial bias.  Defendant claims that because the trial court refused to dismiss counsel and hold a rehearing on a Motion to Suppress, Defendant was led to believe that he would receive thirty years in prison if he went to trial and was convicted.  Defendant claims that he should have been allowed to raise the issue of false testimony that had occurred at the Motion to Suppress.  Failure to allow the rehearing resulted in Defendant's conviction.  The record indicates that the Defendant decided to enter a plea rather than proceed to trial.  That was a choice Defendant made.  Defendant's fear that he would receive a thirty year sentence from the Court if he went to trial and

---

[2] Walker requested, while Foster represented him, that the Office of the Public Defender be discharged.

[3] Walker addressed the court's pre-plea rulings in his case and argued:

Knowing of the court's biased decisions throughout the history of the case, defendant had no choice but to believe that the court contrived against him and wouldn't hesitate to sentence him to 30-years with the habitual offender, if he's convicted based, not on him being guilty, but because of biased ruling of the court and ineffective assistance of counsel.

(Dkt. 29, Ex. 69, p. 1367.)

lost was justified as he was charged with a second degree felony and faced a Habitual Felony Offender designation.  Also, whether or not to grant a rehearing was within the discretion of the Court and failing to hold that hearing, or to dismiss counsel, does not demonstrate judicial bias.  **Claim 20**

is **DENIED**.

(Doc. 29, Ex. 70, p. 1411) (court's record citations omitted).

Walker has failed to demonstrate that his plea was involuntarily entered because the court denied his motion to dismiss Foster, thereby requiring him to proceed with counsel he did not want.  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alfora*, 400 U.S. 25, 31 (1970).[4]  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'"  *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "[W]hen

---

[4] Walker's no contest plea is subject to the same analysis as a guilty plea.  *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary.  The rule is the same for pleas of guilty or *nolo contendere*.").  *See also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (stating that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty.").

a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to

show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.

1988).

Walker's plea colloquy provides:

THE COURT: Okay.  Mr. Walker, I need you to raise your right hand, sir.  Do you swear or affirm to tell the truth, the whole truth and nothing but the truth?

THE DEFENDANT: Yes, Sir.

THE COURT: You need to answer out loud.

THE DEFENDANT: Yes, Sir.

THE COURT: And you are Romerio Walker?

THE DEFENDANT: Yes, Sir.

THE COURT: You can put your hand down.  Mr. Walker, we are in case number CF05-9702 - - you are charged by the State with possession of cocaine with intent to sell, which is punishable by up to 15 years in state prison and possession of drug paraphernalia punishable by up to a year in the county jail.
    The plea agreement indicates that you are entering a plea of no contest to those charges anticipating that I am going to sentence you to 8 years in Florida State Prison suspended upon your successful completion of 10 years of probation which will include some drug conditions.
    The effect of this would be if you were to uh  - - violate terms of your probation and a judge were to find that you had violated, willfully, materially, substantially - - those are the key - - willfully, materially, substantially violated terms of your probation - - you could be at that point be sentenced for the 8 years that I am suspending at this point.  Is that your understanding?

THE DEFENDANT: Yes, Sir.

THE COURT: Has anybody made any other promises?

THE DEFENDANT: No, Sir.

THE COURT: Has anybody threatened, coerced or forced you to do this?

THE DEFENDANT: No, Sir.  I have been told I would still have my right to

appeal.

MR. FOSTER: Right.  And Judge, we are - -

THE COURT: Yes, you are going to retain - -

MR. FOSTER:  - - we are entering pleas of no contest for the record specifically reserving the right to appeal the previous denials of his motions to suppress and the renewed motion to suppress - - there have been I believe rulings in this matter, both [b]y Judge Alcott and by Judge Selph previously.

THE COURT: Correct.  You are reserving those rights to appeal and that is what your understanding is, correct?

THE DEFENDANT:   Yes.  The issues - -

THE COURT: Has anybody made any other promises?

THE DEFENDANT: No, Sir.

THE COURT: Anybody threatened, coerced or forced you to do this?

THE DEFENDANT: No, Sir.

THE COURT: Are you currently under the influence of any drug, alcohol, or medication - - anything affecting your ability to understand me?

THE DEFENDANT: No, Sir.

THE COURT: Now, how old are you?

THE DEFENDANT: Thirty-eight.

THE COURT: Thirty-eight.  And how far did you go in school?

THE DEFENDANT: I have a GED and a couple of years of community college as a paralegal.

THE COURT: I figured that.  You have been represented by an attorney - - several attorneys - - and I know that you have had some problems here and there - - but, at this point are you satisfied with the counsel that you have received and the work that has been done?

THE DEFENDANT: At this point, I am satisfied with the outcome of the case.

Yes, Sir.

THE COURT: Okay.  Do you understand that by entering a plea at this point - - you are giving up your right to have a trial in front of a jury?  It would be up to the state to bring in witnesses and prove what they have alleged against you beyond and to the exclusion of all reasonable doubt.

During the course of a trial, you have the right to be represented by a lawyer - - to have your lawyer cross examine - - that means to question any of the witnesses called in by the State and also subpoena and compel witnesses to come in for you.  If you choose not to testify, a jury would be told that is your right, they can not use that against you.

On the other hand, if you choose to testify - - then the jury would be instructed to weigh and consider your testimony like they would anybody else's.  Do you understand that those are the rights of a trial that you are giving up?

THE DEFENDANT: Yes, Sir.

THE COURT: You are also giving up - - no, you are retaining your right to appeal on these earlier issues and you - - if you can not afford an attorney, I would be appointing an attorney to represent you for that.

But, do you understand that if you were to violate the terms of your probation - - you could go to state prison.  And if you were to go to state prison, before being released from any state prison facility, that they would investigate your background to determine if you have any sexually motivated crimes in your past.

If they were to locate a sexually motivated crime, they would further evaluate you under what is called the Jimmy Ryce Act to determine whether or not you should be determined a sexually violent predator.  Do you understand that those are the various rights that you are giving up at this point and the sanction that could be imposed?

THE DEFENDANT: Yes, Sir.

THE COURT: Okay.  And uh - - is anybody aware of any DNA that could exonerate?

MR. FOSTER: No, Sir.

[PROSECUTOR]: No, Your Honor.

THE COURT: And is there a factual basis to support the allegations?

MR. FOSTER: Yes, Sir.  And I would stipulate to a factual basis.  I believe that there is substantial record support in the various transcripts that are in

the court file - -

THE COURT: Okay.

MR. FOSTER:  - - Judge, additionally, with regards to the reservation of appeal - - I believe that the State is stipulating that there is issues that would be dispositive of the case, if they were decided favorably to Mr. Walker.

THE COURT: If the evidence was actually suppressed, that would be dispositive?

[PROSECUTOR]: Correct.

THE COURT: Okay. Mr. Walker, I find - - is there any legal reason we can not proceed to the disposition?

MR. FOSTER: No, Sir.

THE COURT: And do you have a score sheet?

[PROSECUTOR]: I do, Your Honor, I'm sorry.

THE COURT: Mr. Walker, I find that you understand and that you know what you are doing, that you are freely, knowingly and voluntarily entering the plea.  There is a factual basis to support it.

I am accepting this plea and finding you guilty and adjudicating you guilty of possession of cocaine with intent to sell and possession of drug paraphernalia.  The drug paraphernalia I am sentencing you to time served. On the possession of cocaine with intent to sell, I am sentencing you to a term of incarceration of 8 years in Florida State Prison suspended upon the successful completion of 10 years of probation.

Conditions of probation, you are not to possess any illegal drug, consume any illegal drug or associate or be[ ] around people that have drugs on them.  So, you need to be careful of you are hanging with or who gets in your car or whose car you get in.  You are going to need to submit to and pay for random drug screens such as urinalysis.

You need to submit to and pay for an evaluation to determine if you have any treatable problem with illegal drugs and if you have such a problem, submit to, pay for and successfully complete any drug rehab program that may be recommended.

I am imposing court costs in the amount of $498.00, an indigence application fee of $40.00; $150.00 for court appointed attorney's fee; $50.00 of which you have a right to have a further hearing on.  Are you willing to accept that amount?

THE DEFENDANT: Yes, Sir.

THE COURT: And there is $143.00 investigative costs to Polk County Sheriff's Office which apparently you are agreeing to, correct?

THE DEFENDANT: Yes, Sir.

THE COURT: Those various amounts will all need to be paid within uh - - the first 5 years of the 10 years that you are on probation.

THE DEFENDANT: Yes, Sir.

THE COURT: You are going to be subject to warrantless search.  That means law enforcement can come up and search you, your car, your house at any time to make sure that there is nothing illegal around you and that you are in compliance with the terms of your probation.

You do have 30 days in which to appeal this judgment and sentence. If you can not afford an attorney, I would appoint one for you.  Do you wish to have an attorney appointed?  Yes, Ma'am?

[PROSECUTOR]: The only other issue - - it is drug offender probation?

THE COURT: It is.  So that is no alcohol also?

[PROSECUTOR]: Uh - - more importantly - -

THE COURT: The curfew.

[PROSECUTOR]: The curfew.

THE COURT: Okay.  Well, there is no - -

[PROSECUTOR]: And I believe there is no alcohol on drug offender probation.

THE COURT: There is no alcohol in drug offender probation.

[PROSECUTOR]: I think so.  But - -

THE COURT: Oh, I know it is.

[PROSECUTOR]: Okay, yes.  I did check and it is drug offender probation.

THE COURT: It is drug offender probation?

[PROSECUTOR]: Uh-huh.

THE COURT: You know that would prohibit you from having no alcohol also?

THE DEFENDANT: Yes.

THE COURT: And that is acceptable?

THE DEFENDANT: (Indiscern).

THE COURT: So you are not to possess any alcohol, consume any alcohol or go to any establishments where alcohol is their primary source of business.  In other words, don't go to any bars.

THE DEFENDANT: Yes, Sir.

THE COURT: And you will be subject to a curfew which will be from 10:00 am to - - I'm sorry from 10:00 pm to 6:00 am unless otherwise changed your [sic] probation officer.  That is something that you can negotiate with your probation officer.

MR. FOSTER: Judge, he is the sole and primary caregiver for four minor children and I - - I presume that that curfew would be subject to the necessities that might arise - -

THE COURT: Yeah.

MR. FOSTER:  - - within that - - those relationships.

THE COURT: What you need to do is sit down and if there is going to be something that is different than the 10:00 pm to the 6:00 am - - talk to your probation officer ahead of time.  I mean - - just say look, I've got this coming up that we are going to be out past this or whatever.  Just so your probation officer is aware of it beforehand.  Because, the probation officer, their obligation is to enforce the order.

So, what they are trying to do - - they are not trying to bust you - - they are trying to enforce the order imposed.  And if - - if you are going to be out, you need to let them know beforehand as to why and discus[s] that with them.

MR. FOSTER: And I presume Judge and the reason that I brought it up is because uh - - a kid's temperature might spike at 2:00 in the morning and it might be necessary to - -

THE COURT: And if that is the case and when you go to the hospital, just get

a - - it's a matter that you can't be violated unless you willfully, materially and substantially do something that you shouldn't be doing.

And if you are out at midnight on something of your own, that would be a violation.  But, if it is dealing with the kids and you show the probation officer - - he's not going to write you up.

THE DEFENDANT: No, Sir.

THE COURT: Okay.  You do have 30 days in which to appeal this judgment and sentence.  If you can not afford an attorney, I will appoint one.  If you would like to be considered for appointment of a public defender at this point?

THE DEFENDANT: Yes, Sir.

THE COURT: As you - - have your financial situations been changed at all since earlier appointing the public defender?

THE DEFENDANT: No, Sir.

THE COURT: And I will find that you qualify for the services of the public defender and appoint the public defender's office to represent you.

MR. FOSTER: Yes, Sir.

THE COURT: Okay.  Thank you all.

MR. FOSTER: Thank you.

(Dkt. 29, Ex. 83, Vol. VII, pp. 1177-88.)

The record reflects that Walker understood the charges against him and possible penalties he faced, as well as the agreed-upon sentence to be imposed and the terms and conditions of probation.  He also understood the rights that he waived by entering his plea. Walker told the court that he was not forced, coerced, or threatened into entering the plea. He did not raise any complaints about counsel or protest that the court's rulings regarding counsel's performance left him no choice but to plead.

To the extent his decision to plead might have involved a fear of receiving a greater

sentence upon conviction at trial, Walker fails to show that this consideration rendered his plea involuntary.  *See, e.g., Brady v. United States*, 397 U.S. 742, 751 (1970) ("We decline to hold . . . that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.").

Walker has not demonstrated that his plea was involuntary on the basis alleged.  He does not show that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Consequently, Walker is not entitled to relief on Ground Four.

**Ground Two**

The claims in Ground Two stem from Walker's allegation that Foster had a conflict of interest that prevented him from advising Walker about the State's plea offers.   In support, Walker describes three plea offers he claims the State presented.   The first offer was to reduce the charge of possession of cocaine with intent to sell to simple possession, in exchange for a sentence of five years in prison and a waiver of all appellate rights and all claims of ineffective assistance of counsel.  (Dkt. 3, p. 11.)  Walker alleges that the State next offered him a five year sentence for simple possession and, under the terms of the agreement, he "would retain his right to a direct appeal but would still be required to waive claims of ineffective assistance of counsel." (*Id.*)  The third offer, Walker states, was for an eight-year suspended sentence and would provide that Walker "would still be allowed to appeal the orders denying his motions to dismiss the public defender." (*Id.*)  Walker

asserts that Foster relayed the offers but said that he could not advise Walker whether to accept them because conditions about claims involving the performances of Foster and Candy Murphy, another assistant public defender who previously represented Walker in the case, created a conflict of interest.

Walker seems to refer interchangeably to claims challenging the court's denial of his motions to dismiss counsel and claims asserting ineffective assistance of trial counsel. It appears that Walker intends to refer to appellate claims alleging trial court error for denying his motions to dismiss counsel, which motions were based on Walker's allegations that counsel was not providing effective assistance. The Court reaches this conclusion due to Walker's discussion about the claims he wanted to raise on direct appeal[5] and his statements that he did not know he was barred from bringing claims challenging the denial of his motions to dismiss counsel until his appeal was pending.[6] Walker argues that Foster rendered ineffective assistance for failing to inform the court of the conflict and failing to move to withdraw so that conflict-free counsel could be appointed, thereby denying him counsel as guaranteed by the Sixth Amendment. He also claims that his plea was involuntary due to counsel's alleged inability to advise him.

In ground eleven of his second amended postconviction motion, Walker alleged that Foster was ineffective for failing to withdraw in light of the alleged conflict. The state court

---

[5] Claims of trial court error are cognizable on direct appeal, but claims of ineffective assistance of trial counsel typically must be brought in a postconviction motion. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion, and a claim of ineffectiveness generally can be raised in a rule 3.850 motion but not on direct appeal.") (footnotes omitted).

[6] See Fla. R. App. P. 9.140(b)(2)(A) (setting forth the limited issues that may be raised on direct appeal when a defendant enters a plea).

denied Walker's claim:

> In claim 11, the Defendant asserts that trial counsel, Geoffrey Foster, was ineffective in failing to certify a conflict of interest and withdraw as counsel as he was aware that the plea offer of August 8, 2008 created a conflict of interest.  In his claim, the Defendant states that trial counsel relayed a plea offer to him of 5 years prison, but that the Defendant would have to waive any right to file ineffective assistance of counsel claims.  He asserts that trial counsel informed him that he could not offer advice as to whether the Defendant should accept the offer as any ineffective assistance claims might involve his office.  In claim 12 of his Motion, the Defendant states that: "Mr. Foster was aware that Defendant fully intended to argue ineffective assistance of counsel during his direct appeal, and, that for that reason Defendant had declined the State's offers that required Defendant to waive those claims."  Ultimately the Defendant entered a negotiated plea involving 8 years prison suspended upon completion of 10 years probation while preserving his right to appeal the denial of his motions to suppress and his right to file ineffective assistance of counsel claims.
>
> The Defendant does not claim that trial counsel failed to convey a plea offer.  He does not claim any misadvice on the part of counsel.  The Defendant only claims that trial counsel should have withdrawn from the case after conveying the plea offer to the Defendant.  While the Defendant states that trial counsel indicated he could not advise the Defendant on what to do about the offer, the Defendant states that he "fully intended to argue ineffective assistance of counsel during his direct appeal, and, for that reason . . . declined the State's offers that required Defendant to waive those claims."  For the sake of argument, even assuming some ineffectiveness on the part of counsel, the Court finds that the Defendant was not prejudiced by trial counsel's failure to withdraw.  It is clear the Defendant did not intend to accept any offer that included a waiver of his right to file ineffective assistance of counsel claims. Ultimately the Defendant agreed to a sentence with a suspended prison sentence while retaining his right to file ineffective assistance of counsel claims.  For the above reasons, **claim 11 is DENIED**.

(Dkt. 29, Ex. 67, pp. 1393-94.)  The court also rejected claim 23 of Walker's third amended

postconviction motion:

> In claim 23, Defendant argues that his plea was involuntary as he was not given the benefit of advice from conflict free counsel.  Defendant claims that Geoffrey Foster never told the Court that there was conflict of interest.  Defendant fails to state that he would not have entered a plea had he sought advice or how he was prejudiced.  Further, Defendant had the opportunity to mention the conflict to the Court and did not even after the Court mentioned the prior discord.  Nor did he ever request to speak with another attorney.

Defendant's main concern was that he be able to file a direct appeal on the denial of his pretrial motions.  Based on the above, **claim 23** is **DENIED**.

(Dkt. 29, Ex. 70, p. 1411) (court's record citation omitted).

To establish that counsel was ineffective in connection with a conflict of interest, a defendant must demonstrate that there was an actual conflict of interest, and that the conflict adversely affected his lawyer's performance.  *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987).  *See also United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993) ("A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely.") (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980) and *United States v. Petz*, 764 F.2d 1390, 1392 (11th Cir. 1985)).

"An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (citing *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987).  A possible or speculative conflict is insufficient.  *See Cuyler*, 446 U.S. at 350.  "To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties."  *Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001).  "If there is a guilty plea involved, [a] Court looks at whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty."  *Pegg v. United States*, 253 F.3d 1274, 1278 (11th Cir. 2001).  Once a defendant establishes both an actual conflict and an adverse effect from the conflict, prejudice is presumed and the defendant is entitled to relief.  *Lightbourne*, 829 F.2d at 1023.

Walker points to no record evidence to support his claim.  He does not establish that the State made multiple plea offers, what the terms of any such plea offers were, or that Foster refused to advise him because he believed he had a conflict due to conditions about appellate claims challenging counsel's performance.[7]

Even assuming Walker established that Foster had an actual conflict, he has not demonstrated any reasonable alternative action that Foster failed to pursue due to the conflict.  Advice contrary to counsel's interests would have been to reject the plea offer or offers described by Walker and proceed to trial, thereby preserving the ability to raise claims on appeal challenging the trial court's denial of Walker's motions to dismiss counsel due to counsel's alleged deficiencies.[8]  But, as addressed at the change of plea hearing, if Walker proceeded to trial on count one as charged, he faced a possible term of fifteen years[9] in prison.  The State had substantial evidence of Walker's guilt, and Walker does not establish any defense or specific tactic that counsel could have utilized at trial.  Walker fails to show that advice to go to trial and risk a fifteen-year sentence on the hope that he might obtain future appellate relief, as opposed to accepting a significantly lesser sentence

---

[7] The Court takes note that at the change of plea hearing, Walker did not mention counsel's alleged inability to advise him when the court asked whether he was satisfied with counsel's representation.  (Dkt. 29, Ex. 83, Vol. VII, p. 1180.)

[8] Although Walker says the terms of the third plea offer would allow him to appeal the denial of the court's orders denying his motions to dismiss counsel, he concedes in his petition that such a claim is not cognizable on direct appeal following the entry of a plea.  *See* Fla. R. App. P. 9.140(b)(2)(A).  Therefore, Walker only could have preserved the ability to raise such a claim of trial court error on direct appeal had he proceeded to trial.

[9] It appears that Walker actually may have faced a thirty-year sentence had he been convicted at trial because the State at least considered seeking habitual sentencing at some point.  As addressed in Ground Four, *supra*, the state court noted that Walker's "fear that he would receive a thirty year sentence from the Court if he went to trial and lost was justified as he was charged with a second degree felony and faced a Habitual Felony Offender designation."  (Dkt. 29, Ex. 70, p. 1411.)

through a plea agreement, was reasonable.  As Walker has not demonstrated an actual conflict that adversely affected counsel's performance, he fails to meet his burden to show ineffective assistance of counsel and fails to show that he was denied counsel in violation of the Sixth Amendment.  Similarly, he does not show that his plea was involuntary because of this alleged ineffective assistance.

Walker has not demonstrated that the state court's denial of his claims was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Consequently, Ground Two warrants no relief.

**Ground Three**

Walker argues that he never formally entered a plea and that, instead, counsel entered the plea on his behalf.  He appears to raise two claims of error in connection with this assertion.  First, Walker contends that the state court had no authority to impose sentence because he had not entered a plea.  (Dkt. 3, p. 29.)  Walker's argument is liberally interpreted as presenting a federal due process claim.

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picara v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to

exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 167-70 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Walker did not exhaust his federal claim because he did not raise the federal dimension of the argument in state court. (Dkt. 29, Ex. 54, pp. 846-52.) Walker cannot return to state court to present the ground in a successive Rule 3.800(a) motion. *See* Fla. R. Crim. P. 3.800(a)(2). Therefore, the claim is procedurally defaulted. Walker does not argue or establish that either exception applies to overcome the default. Notwithstanding

the default, however, Walker is not entitled to relief.  In his Rule 3.800(a) motion to correct illegal sentence, Walker argued that the court lacked authority to sentence him because he never entered a plea.  (Dkt. 29, Ex. 54, p. 849.)  The state court denied relief by adopting the State's response to this allegation, which provides:

> The Defendant's claim is refuted by the record and should be denied.
> The record shows the Court, after first placing the defendant under oath, informed him of the charges against him as well as the maximum penalties.  The Court then advised the defendant that the plea agreement indicated the defendant was entering a plea of no contest to the charges in anticipation the court was going to sentence him to 8 years in Florida State Prison suspended upon his successful completion of 10 years of probation which would include some drug conditions.  The Court then asked the defendant if that was his understanding and he answered "Yes, Sir."
> The record reflects Geoff Foster, Esquire, appeared for the defense.  Mr. Foster stated ". . . we are entering pleas of no contest for the record specifically reserving the right to appeal the previous denials of his motions to suppress and the renewed motion to suppress. . ."  The Defendant also stated he had been told he would still have the right to appeal.  The Court asked the defendant if he was satisfied with the counsel he received and the work that had been done and the defendant answered in the affirmative.
> The record reflects the Court conducted an extensive plea colloquy to make sure the defendant understood the nature of the charges, maximum penalties, the terms of the plea agreement, all the rights he was giving up by the entry of the plea, and that his plea was freely, understandingly, and voluntarily being entered.
> The Court made a finding that the defendant understood and knew what he was doing and that the plea was freely, knowingly, and voluntarily entered.  The Court advised it was accepting the plea.
> The defendant now is claiming he never entered a plea.  However, no defendant could reasonably claim he did not enter a plea given the above record.  He is mistaken that there are certain magic words that must be spoken.  To the contrary, the record shows the defendant understood he was entering a plea of no contest, understood the terms of the plea, said nothing when counsel appearing on his behalf stated he was entering a plea, and said nothing when the Court repeatedly referred to his plea during the colloquy.
> The [State] would note that the illegality of a sentence motion pursuant to Rule 3.800(a) is not subject to an evidentiary hearing.  The validity of such a motion must be apparent from the court's file.  To the contrary, in this case, the record shows the defendant is not entitled to relief.

(Dkt. 29, Ex. 55, pp. 1221-23) (State's record citations omitted).

Although the court did not directly ask him if he in fact was entering a plea, Walker cites no authority providing that a defendant must say any particular words to effectuate entry of a plea. The court asked Walker whether it was his understanding that he was entering a no contest plea, and Walker replied that it was. Furthermore, the change of plea hearing transcript, read in its entirety, reflects that Walker understood he was entering a plea and that he voluntarily made the choice to do so. He voiced no objections, hesitation, or confusion about entering his plea. Nor did he protest when the court announced that it accepted his plea as freely and voluntarily entered. In addition, Walker signed a plea form providing that he entered a plea of no contest to the counts as charged, that he would receive an agreed-upon sentence, and that he acknowledged the rights he waived. (Dkt. 29, Ex. 2.) Walker does not show entitlement to relief.[10]

Walker's second argument within Ground Three is that his attorney lacked authority to enter a no contest plea on his behalf. He states that "it appeared that [Walker] was confused as to the issues [he] would be allowed to raise on direct appeal, so to keep [him] from discovering the truth the Public Defender injected himself in the plea colloquy and entered a no contest plea on [his] behalf." (Dkt. 1, p. 8.) This argument is interpreted as raising the same ineffective assistance of counsel claim that Walker presented in claim 15 of his second amended postconviction motion, to which Walker refers in his federal habeas petition. In that claim, he argued that counsel was ineffective for failing to object to his

---

[10] In his third amended postconviction motion, Walker similarly alleged that the state court was without jurisdiction to impose sentence because he did not formally enter a plea. (Dkt. 29, Ex. 69, p. 1350.) The state court rejected this claim for the same reasons set forth in its denial of Walker's Rule 3.800(a) motion. (Dkt. 29, Ex. 70, p. 1410.) To the extent Walker challenges this ruling, he has not shown that relief is warranted.

being sentenced despite not having entered a plea or having had a trial.  The state court rejected his argument:

> Claim 15 in Defendant's Second Amended Motion argued that trial counsel, Geoffrey Foster, was ineffective in failing to object to Defendant being sentenced without entering a plea or being allowed a trial.  Defendant raised the claim that a plea was never entered in his 3.800(a) Motion for Postconviction Relief.  That Motion was denied in an Order dated March 15, 2011.  The Order concluded, based on the State's response, that the Defendant had in fact entered a plea and that he entered a plea in lieu of proceeding to trial.  Based on the above, **claim 15** is **DENIED**.

(Dkt. 29, Ex. 70, p. 1409.)

The record supports the denial of this claim.  As addressed, the record is clear that Walker entered a no contest plea in exchange for an agreed-upon sentence. Thus, Walker has not established a basis upon which counsel could have objected.  Furthermore, there is no indication from the record of the change of plea hearing that Walker was confused about the issues that he reserved the right to raise on direct appeal.  It was apparent that, as part of the agreement, Walker reserved the right to challenge on appeal the dispositive issue of the court's denial of his motion to suppress. Walker fails to show that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts. Walker is not entitled to relief on Ground Three.

**Ground One**

In Ground One, Walker alleges ineffective assistance of counsel in connection with his motions to suppress.

I.      **Walker's Motion To Suppress**

Through his attorney at the time, Ronald Toward, Walker filed a motion to suppress

physical evidence and admissions on July 14, 2006.  The motion alleged that evidence was

obtained as a result of an illegal warrantless seizure and illegal investigatory detention in

violation of the Fourth and Fourteenth Amendments.  (Dkt. 29, Ex. 83, Vol. VI, pp. 1001-

05.)  The court conducted an evidentiary hearing, at which Polk County Sheriff's Deputy

Brad Gallagher testified about the events leading to Walker's arrest.

Gallagher conducted a traffic stop at 2:52 a.m. on December 17, 2005, after he saw

Walker make a right turn at a red light without stopping.  (Dkt. 29, Ex. 83, Vol. VII, pp. 1197-

98.)  Gallagher made contact with Walker and waited for him to get his information from the

locked glove box.  (*Id.*, pp. 1200-01.)  That Walker seemed "very protective" of the glove

box raised Gallagher's suspicions about its contents.  (*Id.*, p. 1201.)  Walker re-locked the

glove box after retrieving the documents.  (*Id.*)  Gallagher, who performed traffic stops

"continuously all night long," believed it "was very unusual for this to occur."  (*Id.*)

Walker gave Gallagher his registration and Florida identification card. (*Id.*) Walker

did not give Gallagher proof of insurance. (*Id.*) Walker stated that his driver's license was

valid but that he did not have it with him. (*Id.*)  Gallagher returned to his car and looked up

Walker's information, verifying that Walker had a valid driver's license. (*Id.*, p. 1202.)[11]

Because of his suspicions about the potential contents of the glove box, Gallagher asked

Walker for permission to search the car.  (*Id.*, pp. 1202-03.) Walker did not consent to a

search of the car's interior, but agreed that Gallagher could search the trunk and look

---

[11] Gallagher stated that he "was able to run Mr. Walker through FCIC, through DLIRs and stuff."  (Dkt. 29, Ex. 83, Vol. VII, p. 1202.)

through the car's windows with a flashlight.  (*Id.*, p. 1203.)  Walker refused Gallagher's request to open the glove box as part of the flashlight search.  (*Id.*, pp. 1203-04.)

Gallagher requested a canine unit over the radio.  (*Id.*, p. 1204.)  Walker found his proof of insurance.  (*Id.*)  Gallagher returned to his car to verify Walker's insurance information. (*Id.*)  Gallagher was about to begin writing Walker a citation but realized he had run out of citation forms.  (*Id.*, pp 1204-05.)  "As soon as [Gallagher] noticed" this, the canine unit with Deputy Leslie and another unit with Deputy Marvin arrived.  (*Id.*, p. 1205.)  Gallagher obtained a citation form from Marvin and started writing the citation.  (*Id.*, p. 1206.)

As Leslie conducted the dog sniff, Gallagher finished writing the citation.  (*Id.*, p. 1207.)  After Leslie's dog alerted to Walker's vehicle, the deputies found $3,050 in cash in the glove box, cocaine in the driver's seat, and cocaine and paraphernalia on Walker's person.  (*Id.*, pp. 1207-08.)  Thirteen minutes passed between the time Gallagher stopped Walker and Leslie's arrival with the dog.  (*Id.*, p. 1206.)

The state trial court denied Walker's motion to suppress on September 20, 2006. The order, signed by Judge Alcott, found "the warrantless search of the vehicle to be reasonable as based on a valid traffic stop and the probable cause furnished by the canine alert that occurred without unreasonable delay."  (Dkt. 29, Ex. 83, Vol. VI, pp. 1008-09.)

On October 20, 2006, Walker deposed Gallagher during the civil forfeiture case involving his vehicle, in which Walker proceed *pro se.*[12]  Based in part on the testimony

---

[12] Section 932.702(1), Fla. Stat., provides that it is unlawful to "transport, carry, or convey any contraband article in, upon, or by means of any vessel, motor vehicle, or aircraft." Florida law provides for the seizure and forfeiture of motor vehicles used for this purpose.  *See* § 932.703, Fla. Stat.

adduced during that deposition, on December 12, 2006, Toward filed a "Renewed and Supplemental Motion to Suppress Evidence and Admissions," in which he moved the court to reconsider its denial of the motion to suppress.  (*Id.*, pp. 1012-19.)  He argued that Gallagher's October 2006 testimony showed that Gallagher abandoned the traffic investigation and engaged in a detention of Walker calculated to result in a search.  (*Id.*, pp. 1017-18.)  Toward withdrew from the case at some point after filing the motion for rehearing.  Candy Murphy, who was then appointed to represent Walker, filed another motion to suppress on April 30, 2007, and adopted Toward's December 2006 renewed motion to suppress. (Dkt. 4, Ex. 5.)

In addressing the outstanding suppression issues at an August 24, 2007 hearing, a successor judge, Judge Selph, took the matter concerning Gallagher's testimony under advisement.  (Dkt. 29, Ex. 83, Vol. VI, pp. 1047-49.)  At a September 12, 2007 hearing, Judge Selph stated that he had read the transcript from the civil forfeiture case and listened to the recording of the original motion to suppress hearing. (*Id.*, pp. 1066-67.)  He rejected Walker's request to reconsider the denial on the basis of Gallagher's civil forfeiture testimony.  (*Id.*, pp. 1068-70; Vol. VII, pp. 1071-75.)  Suppression issues were again addressed at hearings on January 4, 2008, and March 25, 2008, before a second successor judge, Judge Jacobsen.  At both hearings, Judge Jacobsen declined to reconsider the previous suppression rulings.  (Dkt. 29, Ex. 83, Vol. VII, pp. 1104, 1129-31, 1159-60.)

## II.    Walker's Habeas Argument

In his federal habeas petition, Walker alleges that counsel "failed to investigate, develop, and bring impeachment evidence before the Court during hearings on the motion

to suppress." (Dkt. 1, p. 5.) Walker claims that he uncovered this "impeachment evidence" during his own investigation in the civil forfeiture case.

Walker's voluntary plea waives any claims of constitutional violations prior to the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

However, Walker may present a claim of ineffective assistance of trial counsel if such a claim challenges the voluntariness of the plea itself. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). *Stano v. Dugger,* 921 F.2d 1125, 1150-51 (11th Cir. 1991) ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the plea.") (citation omitted). Walker alleges in his memorandum, similar to his argument in Ground Four, that he was forced into entering the plea due to counsel's performance. (Dkt. 3, p. 24.) Accordingly, this claim is interpreted as invoking the voluntariness of his plea. Walker presents three specific matters that he alleges counsel should have addressed during the motion to suppress hearing. Each allegation is discussed below.

**A.**    Walker asserts that counsel was ineffective for failing to locate and present records showing that Gallagher obtained Walker's criminal history at some point after he initiated

the stop.  Walker contends that his criminal history, not Gallagher's concerns about the

glove box, was the real reason Gallagher called for a canine unit.[13]  In support, Walker

states that a Florida Department of Law Enforcement Transaction Archive Report shows

that Gallagher requested and obtained Walker's criminal records at 2:55 a.m. on December

17, 2005, three minutes after he initiated the stop.  (Dkt. 3, p. 23.)

This allegation is construed as raising the same argument presented in claim 1 of

Walker's postconviction motion, in which he asserted that Toward, who represented him

at the motion to suppress hearing, should have obtained and presented this information.

The state court rejected Walker's argument:

> In claim 1, the Defendant asserts that trial counsel, Ronald Toward[ ], was
> ineffective in failing to investigate whether Deputy Brad Gallagher ran the
> Defendant through the Crime Center Computer and raise the issue as part
> of Defendant's motion to suppress.  In his Motion, the Defendant argues that
> Deputy Gallagher ran a check of the Defendant's prior criminal record when
> he returned to his vehicle after stopping the Defendant for a traffic infraction
> and requesting the Defendant's driver's license and registration.    The
> Defendant argues that discovery of the Defendant's prior criminal history was
> the reason Deputy Gallagher called for a K-9 and not the deputies suspicions
> concerning the Defendant's glove box.
> . . .
>      The  record  reflects  that  [Toward]  filed  a  motion  to  suppress  the

---

[13] Gallagher did not expressly state the reason that he called for a canine unit, but testified that he did
so after requesting to look at the glove box with his flashlight:

> I went around to the passenger's side of the vehicle and started shining my light through the
> window still on the outside of the vehicle like he had said I could do.  I got to the glovebox
> which was my initial suspicion in the first place, and I asked him if he could just open up his
> glovebox so I could shine my light in there.  He said that - - Mr. Walker stopped and said - -
> he said he would open anything that I ordered him to.  That's when I stopped him and told
> him - - I said, "I'm not ordering you to do anything."  I said, "I'm asking you for consent to
> search your vehicle."  At that point I started waiting for a "yes" or "no" answer from Mr.
> Walker.  Mr. Walker then said no, he didn't want me to search his vehicle.
>
> At that time I requested K-9 over the radio.  I walked with Mr. Walker back to the driver's side
> of the vehicle . . .

(Dkt. 29, Ex. 83, Vol. VII, pp. 1203-04.)

evidence seized as a result of the traffic stop.  After a hearing on the motion to suppress, the trial court issued its order denying the Defendant's motion to suppress.  Deputy Gallagher's testimony and the trial court's findings indicate that the K-9 unit arrived within a short time period of the initial stop of the Defendant's vehicle.  During Deputy Gallagher's contact with the Defendant, he conducted a proper investigation into the validity of the operator's driver's license status as well as a warrants check.  Before Deputy Gallagher could complete this investigation, and before he could issue any citations, another officer arrived on the scene and conducted a sniff test of the exterior of the car with her dog.  Such a test, conducted during a traffic stop, is completely lawful and does not even implicate the Fourth Amendment.  *See* United States v. Place, 462 U.S. 696, 103 S.Ct. 2637 (1983) (The use of a sniff dog constitutes neither a search nor a seizure.); McNeil v. State, 656 So. 2d 1320 (Fla. 5th DCA 1995) (A driver who is stopped for a citation can be subjected to a sniff-out dog so long as it's done within the time required to issue the citation); and State v. Williams, et. al., 565 So.2d 714, 715 (Fla. 3d DCA 1990) (Three minutes between the initial stop and the time a dog sniff was started was *de minimus* intrusion into the defendant's liberty interest.  "Thus their Fourth Amendment rights were certainly not infringed."). [See also Sands v. State, 753 So. 2d 630 (Fla. 5th DCA 2000)]

   The subsequent alert by the dog to the presence of narcotics within the vehicle constituted sufficient probable cause to search the vehicle without a warrant.  *See* Saturino-Boudet v. State, 682 So. 2d 188, 193 (Fla. 3d DCA 1996) ("A sniff dog's 'alert' can constitute probable cause to conduct a search.") Once probable cause existed to search the vehicle, no warrant was needed to authorize the search.  Deputy Gallagher's reasons for or motivation in initiating a dog sniff of the vehicle are immaterial here.  Even if he had become aware of the Defendant's prior history, the Fourth Amendment is not implicated if the dog sniff is properly conducted within the time period evidenced in this case and as found in the trial court'[s] denial of the Defendant's motion to suppress.  Therefore, the Court finds that even if it had been shown that Deputy Gallagher was aware of the Defendant's prior history the result would not have been different and the second prong of Strickland v. Washington, 466 U.S. 668 (1984) has not been met.  Accordingly, **claim 1 is DENIED**.

(Dkt. 29, Ex. 67, pp. 1385-87) (court's record citations omitted).[14]

   To the extent Walker argues that information showing Gallagher obtained his

---

[14] When Walker repeated this allegation in claim 16 of his third amended postconviction motion, the state court denied it for the same reasons.  (Dkt. 29, Ex. 70, p. 1410.)  To the extent Walker challenges this ruling, he has not met his burden under AEDPA and is not entitled to relief.

criminal history reflects an inconsistency in Gallagher's statements about why he called for a canine unit, and thus would have shown him to be an untrustworthy witness, his claim is entirely speculative.   Walker has not demonstrated that such information would have caused the court to discredit Gallagher's testimony and grant the motion.   Speculation cannot sustain a claim of ineffective assistance of counsel.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Nor does Walker show that information about Gallagher's motive in calling for a canine unit would have provided a basis to challenge the validity of the search under the Fourth Amendment, which protects against unreasonable searches and seizures.  "When police stop a motor vehicle, even for a brief period, a Fourth Amendment 'seizure' occurs." *United States v. Whitlock*, 493 Fed. App'x 27, 30 (11th Cir. 2012) (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996)).  Limits apply to an officer's conduct during a traffic stop:

> Under *Terry* [*v. Ohio*], an officer's actions during a traffic stop must be "reasonably related in *scope* to the circumstances which justified the interference in the first place."  392 U.S. at 20, 88 S.Ct. 1868 (emphasis added).  Furthermore, the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop.  *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999).  The traffic stop may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity.  *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997).

*United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001).

"Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or 'fruit of the poisonous tree,' cannot be used in a criminal

trial against the victim of the illegal search and seizure." *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003) (citing *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990)).

Walker has not shown that Gallagher's obtaining his criminal history during the course of the traffic stop was improper. "So long as the computer check does not prolong the traffic stop beyond a reasonable amount of time under the circumstances of the stop, the inclusion of a request for criminal histories does not constitute a Fourth Amendment violation." *Purcell*, 236 F.3d at 1279. "It is well established that officers conducting a traffic stop may 'take such steps as [are] reasonably necessary to protect their personal safety.'" *Id.* at 1277 (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). "Many courts have recognized that knowledge of the criminal histories of a vehicle's occupants will often be relevant to that safety. . . . The request for criminal histories as part of a routine computer check is justified for officer safety." *Id.* at 1278. Walker does not show that reviewing criminal history of vehicle occupants during a traffic stop was not routine for Gallagher.

Furthermore, Walker does not establish that Gallagher's reason for calling the canine unit was relevant to the legality of the dog sniff and subsequent seizure of contraband. A dog sniff is generally permissible during a traffic stop as long as it does not unreasonably add to the duration of the stop. "[A] dog sniff that does not unreasonably prolong the traffic stop is not a search subject to the Fourth Amendment, and based on this principle, the Supreme Court has 'rejected the notion that the shift in purpose from a lawful traffic stop into a drug investigation was unlawful because it was not supported by any reasonable suspicion.'" *Whitlock*, 493 Fed. App'x at 31 (quoting *Muehler v. Mena*, 544 U.S.

93, 101 (2005)).  *See also Illinois v. Caballes*, 543 U.S. 405, 409 (2005) ("[T]he use of a well-trained narcotics-detection dog–one that does not expose noncontraband items that otherwise would remain hidden from public view–during a lawful traffic stop, generally does not implicate legitimate privacy interests.") (internal quotation marks and citation omitted); *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609, 1616 (2015) ("The critical question . . . is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff prolongs–*i.e.*, adds time to–the stop.") (internal quotation marks omitted).

Gallagher's testimony shows that the drug dog arrived and performed a sniff during the course of the traffic stop.   Gallagher was checking Walker's insurance information—which Walker did not initially provide–when the dog arrived, and the sniff occurred as Gallagher wrote Walker's traffic citation.[15]  Walker does not show that the traffic stop was unreasonably extended due to the dog sniff, or that the reason for requesting the dog sniff in these circumstances had any bearing on the legality of the subsequent search and seizure.   Walker has not shown that counsel was ineffective for failing to uncover and present this information during the motion to suppress hearing.  Nor does he show a reasonable probability that the motion to suppress would have been granted on this basis and that he therefore would have chosen to proceed to trial rather

---

[15] Walker does not establish that Gallagher's request for consent to search Walker's car unreasonably prolonged the traffic stop.  *See Purcell*, 236 F.3d at 1281 ("An officer conducting a routine traffic stop may request consent to search the vehicle.") (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) and *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999)).  Nor does he show that Gallagher's check of his registration, license, or insurance unreasonably prolonged the traffic stop.  *See Rodriguez*, 135 S.Ct. at 1615 ("Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop.  Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.") (internal quotation marks, brackets, and citations omitted).

than enter his plea.   Walker has not demonstrated that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.

**B.**   Walker argues that counsel was ineffective for failing to investigate what Gallagher could see inside the glove box during the stop.   Gallagher testified at the motion to suppress hearing that Walker obtained some documentation from inside the locked glove box, and he was suspicious of what was inside the glove box.   Walker appears to argue that, based on videos Walker later took to recreate Gallagher's actions, Gallagher must have been able to see everything inside the glove box.   Walker theorizes that this shows Gallagher could not have been uncertain about the glove box's contents and his decision to call the canine unit was based on Walker's criminal history.

The state court rejected this claim when Walker raised it in his postconviction motion:

> In claim 2, the Defendant asserts that [Toward] was ineffective in failing to investigate whether Deputy Brad Gallagher could see into the Defendant's glove box during a traffic stop of the Defendant and raise the issue as part of Defendant's motion to suppress.   Again, in this claim the Defendant remains focused on Deputy Gallagher's reasons for initiating a dog sniff of the Defendant's vehicle.   In this claim, the Defendant is focusing on the extent to which Deputy Gallagher could actually observe the Defendant's glove box in order to show that the true reason for [the] dog sniff was Deputy Gallagher's knowledge of the Defendant's prior record.   For the reasons as cited regarding claim 1, the Court finds claim 2 to be without merit.   Accordingly, **claim 2 is DENIED**.

(Dkt. 29, Ex. 67, p. 1387.)

Walker raised another claim concerning the glove box and video, which the state court denied:

> In claim 6, the Defendant asserts that trial counsel, Candy Murphy,

was ineffective in failing to review a video related to a view of the Defendant's glove box and raise the issue as part of Defendant's motion to suppress.  In this claim, the Defendant asserts that he had had a video produced that indicates that Deputy Gallagher could have seen in the Defendant's glove box while standing outside the vehicle while observing the Defendant retrieve his identification from the glove box.  Apparently, the Defendant's point is that such video would refute Deputy Gallagher's contention that he was suspicious of what might be in the glove box.  This apparently would support the Defendant's contention that Deputy Gallagher abandoned his traffic investigation and detained the Defendant without probable cause to investigate his suspicion that the Defendant had drugs in his vehicle based on the Defendant's past criminal history.

As with claims 1 and 2, above, the Court finds claim 6 to be without merit.  Accordingly, **claim 6 is DENIED**.

(Dkt. 29, Ex. 67, p. 1390.)

Again, any claim that information about Gallagher's motivations would have caused the court to find his testimony not credible and therefore grant the motion to suppress is too speculative to support an ineffective assistance claim. *See Tejada*, 941 F.2d at 1559.  And, as discussed, Walker fails to show that Gallagher's motive in requesting a canine unit would have supported a Fourth Amendment claim.  Walker has not carried his burden to establish that counsel performed deficiently or that he suffered resulting prejudice.  He does not show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.

**C.**   Walker contends that counsel was ineffective for failing to present evidence that Gallagher abandoned the traffic stop before the police dog arrived, and therefore detained Walker without probable cause.  Walker maintains that he was able to develop this information when, proceeding *pro se* in the civil forfeiture proceeding, he deposed Gallagher.  A portion of what appears to be Gallagher's deposition transcript provides:

Q.      So this happened after we walked around the vehicle with the
flashlight, I had gotten back in the vehicle?

A.      No.  This was the whole entire incident.  I started on your driver's side
talking to you while you were inside your car.  You got out of your vehicle,
opened up your trunk.  We saw that there was nothing the trunk besides the
speaker system.  We continued then to the passenger side of your vehicle,
where I asked you about the glove box, and that's where the search with the
flashlight ended.

Q.      And at this time, would you consider yourself - - what would you
consider yourself doing at this point?

A.      Looking in your vehicle with my flashlight, which is exactly what you
told me I could do.

Q.      Would you consider this part of the investigation of the traffic infraction
or a new investigation?

A.      It was investigation to the contents of the glove box, which was my
initial worry or suspicion about the vehicle itself because you were protective
of the contents.

Q.      So it would have been an investigation outside of the traffic violations?

A.      Outside of the - -

Q.      Running the red light?

A.      - - failure to stop, that's correct.  Could be open containers, could be
anything else in the vehicle that you could see from the outside of the
vehicle.

(Dkt. 29, Ex. 83, Vol. VI, pp. 1010-11.)

The state court denied Walker's claim that counsel was ineffective for failing to

uncover and present such evidence:

In claim 3, the Defendant asserts that [Toward] was ineffective in failing to
investigate whether Deputy Brad Gallagher abandoned his traffic
investigation and raise the issue as part of Defendant's motion to suppress.
In this claim, the Defendant points to a portion of a transcript of a hearing in
a civil case involving the forfeiture of property belonging to the Defendant.
In a pro se examination of Deputy Gallagher the Defendant questioned the

deputy concerning his purpose in wanting to search the Defendant's vehicle. The Defendant's argument appears to be that Deputy Gallagher abandoned his traffic investigation and detained the Defendant without probable cause to investigate his suspicion that the Defendant had drugs in his vehicle based on the Defendant's past criminal history.

The difficulty with the Defendant's argument, as explained with regard to claim 1, is that the traffic top did not appear to have been unreasonably prolonged regardless of Deputy Gallagher's reasons for employing a K-9. Probable cause was not needed to employ the K-9. A relatively short period of time expired while waiting for the K-9 and Deputy Gallagher was engaged in attempting to write a traffic citation during the period he was waiting for the K-9. The Defendant was ultimately given a citation for his traffic infraction. The Court finds the Defendant's claim is without merit. Accordingly, **claim 3 is DENIED**.

(Dkt. 29, Ex. 67, pp. 1387-88.)

The record supports the state court's denial of this claim. Despite Gallagher's later description of two different matters with which he was concerned–the traffic infraction and the contents of the glove box–the stop for the traffic citation was ongoing and had not been unreasonably delayed when Gallagher conducted the trunk search and the flashlight search. Furthermore, the record shows that Murphy presented Gallagher's October 2006 testimony to the court during the consideration of Walker's motions to rehear and reconsider the court's denial of the motion to suppress. Upon reviewing the record of the motion to suppress hearing and the deposition, however, the court did not find any basis to reconsider the motion to suppress. (Dkt. 29, Ex. 83, Vol. VI, pp. 1068-70; Vol. VII, pp. 1071-75.)

Walker has not shown that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an

unreasonable determination of the facts.  Walker is not entitled to relief on Ground One.[16]

**Ground Five**

Walker represented himself during violation of probation proceedings.  He asserts

that, on June 21, 2010, at the evidentiary hearing on an allegation of violation and

subsequent sentencing, the court erred by allowing him to continue to proceed *pro se*

without offering him counsel.  Walker's claim is interpreted as raising the allegation

presented in claim 19 of his third amended postconviction motion.  In that ground, he

argued that the trial court's failure to renew the offer of counsel or conduct a *Faretta*[17]

hearing at the violation of probation hearing resulted in his *pro se* representation "without

a valid waiver of his Sixth Amendment right to counsel and deprived him of a fair

opportunity to be heard under the Fourteenth Amendment." (Dkt. 29, Ex. 69, p. 1364.)  The

state court rejected Walker's claim:

> In claim 19, Defendant alleged that he was denied assistance of counsel at
> his evidentiary hearing held on June 21, 2010.  Defendant claims that his
> sentence for a violation of probation was imposed without assistance of
> counsel or a valid waiver of counsel.  The State responded that Defendant's
> claim should have been raised on direct appeal.  The record indicates that
> the Defendant filed a Notice of Appeal, but then moved to voluntarily dismiss
> said appeal.
> After review of the State's argument, citations, and attachments to its
> Response, adopted and incorporated herein, the Court agrees.

(Dkt. 29, Ex. 72) (court's record citation omitted).

The State's response, adopted by the postconviction court, provides:

The Defendant now claims that he was denied counsel at his hearing and

---

[16] To the extent Walker's claim involves the argument raised in ground six of his second amended postconviction motion, in which he alleged that the video he made concerning Gallagher's view into the glove box would have shown Gallagher abandoned the traffic stop, Walker fails to show entitlement to relief.

[17] *Faretta v. California*, 422 U.S. 806 (1975).

subsequent sentencing. This claim should be summarily denied. See Bundy v. State, 497 So.2d 1209 (Fla. 1986) "we find that appellant's fourth claim [denial of a proper *Faretta* hearing] could have been raised on direct appeal and is therefore barred from consideration." *Id.*, at 1210. See also Kilpatrick v. State, 658 So.2d 1158 (Fla. 2nd DCA 1995). The Defendant's claim is not properly addressed in a Rule 3.850 motion for postconviction relief as it could have been raised on direct appeal. Issues that could have been litigated through direct appeal are not cognizable through collateral attack. See Smith v. State, 445 So. 2d 323, 325 (Fla. 1983).

(Doc. 29, Ex. 71, pp. 2-3.)

A federal habeas petitioner's failure to present a claim in accordance with state procedural rules generally precludes federal habeas review of the claim. *Coleman v. Thompson*, 501 U.S. 722(1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir.2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." *Id.* (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir.1990)).

Florida courts regularly follow the rule that claims of trial court error are properly raised on direct appeal. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001) ("[T]he main

question on direct appeal is whether the trial court erred. . . . A claim of trial court error generally can be raised on direct appeal.").  Florida courts also routinely observe the rule that issues appropriate for direct appeal are not cognizable in a postconviction motion.  *See Perez v. State*, 959 So.2d 408, 411 (Fla. 3d DCA 2007) ("Perez's . . . claims are all claims Perez could have raised on direct appeal and, therefore, [are] not cognizable under rule 3.850 . . . and are procedurally barred); *Suto v. State*, 422 So.2d 924, 924 (Fla. 2d DCA 1982) ("Issues which were or could have been raised on a direct appeal are not cognizable grounds for relief under rule 3.850.").

The state court resolved this ground by applying an independent and adequate state procedural bar.  Therefore, it is procedurally defaulted and may only be considered if Walker establishes that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default.  *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these exceptions).   Walker does not demonstrate that either exception applies.  Consequently, Ground Five is barred from review and cannot provide relief.

It is therefore

**ORDERED** that Walker's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is directed to enter judgment against Walker and to close this case.

It is further **ORDERED** that Walker is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of

appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Walker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Walker has not made this showing.  Finally, because Walker is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on February 7, 2017.

Charlene Edwards Honeywell
United States District Judge

Copy to:
Romerio La'Tee Walker
Counsel of Record